```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :      MEMORANDUM & ORDER
        v.                               :      22-CR-368 (WFK)
                                         :
ARTOM RAFAELOV,                          :
                                         :
                Defendant.               :
-------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 28, 2022, Defendant Artom "Ariel" Rafaelov ("Defendant") waived indictment and pled guilty to the sole count of an Information, charging him with Health Care Fraud, in violation of 18 U.S.C. § 1347. The Information also contains a forfeiture allegation. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 37 months of imprisonment to be followed two by years of supervised release with special conditions. Defendant is required to pay a mandatory special assessment of $100.00. Defendant must also pay restitution in accordance with the Restitution Order. Finally, forfeiture is ordered in accordance with the terms set forth in the Order of Forfeiture.

## I. Background

On September 28, 2022, Defendant Artom "Ariel" Rafaelov ("Defendant") waived indictment and pled guilty to the sole count of an Information charging him with Health Care Fraud, in violation of 18 U.S.C. § 1347. Plea Agreement ¶ 1, ECF No. 23. Specifically, the Information alleges that, between 2017 and 2021, Defendant executed a scheme to defraud, and obtain by fraudulent means the money or property of, Medicare. Information ¶ 1, ECF No. 22. Given the complexity of the offense, a brief explanation of the Medicare drug plans, and the corresponding reimbursement process, is warranted.

### A. Medicare Part D Plans

Medicare is a federal health care program administered by the Centers of Medicare and Medicaid Services, a federal agency within the United States Department of Health and Human Services. Presentence Investigation Report ("PSR") ¶ 5, ECF No. 29. Medicare provides

benefits to individuals aged 65 and older as well as to disabled individuals (collectively "Medicare beneficiaries"). *Id.* Relevant to this case, Part D of the Medicare program involves prescription drug coverage. *Id.* ¶ 6. Under Part D, Medicare beneficiaries can obtain prescription drug coverage either by (1) joining a prescription drug plan, or by (2) joining a Medicare Advantage Plan. *Id.* ¶ 7. While the former covers only prescription drugs, the latter, which is referred to as a "Part D Plan," covers both prescription drugs and medical services. *Id.* Part D Plans, which are approved by Medicare, are operated by private companies or "sponsors." *Id.*

When a Medicare beneficiary is a member of a Part D Plan, pharmacies can dispense medication to those beneficiaries and then submit claims for reimbursement under Part D. *Id.* ¶ 9. These claims are submitted either directly to the Part D Plan sponsors, to Pharmacy Benefit Managers who represent the Part D Plan, or to a Pharmacy Services Administration Organization that then contracts with a Pharmacy Benefit Manager on behalf of the pharmacy. *Id.* ¶ 10. Notably, a pharmacy can only receive reimbursement for medications that are medically necessary and actually dispensed to a beneficiary. *Id.* A pharmacy must keep records verifying that the medication it is seeking reimbursement for has actually been dispensed. *Id.*

### B.    Targretin Drug

Cutaneous T-Cell Lymphoma is a rare type of cancer that primarily affects the skin. ¶ 14. A certain dose of Targretin was approved by the United States Food and Drug Administration ("FDA") as a priority drug for the topical treatment of patients with Cutaneous T-Cell Lymphoma who were not tolerant of other forms of treatment. *Id.* 14-15. Targretin Gel 1%, which is the dose approved by the FDA, is medically necessary only if other skin-directed

treatments fail with respect to a particular patient. *Id.* The drug costs approximately $34,000.00 for a sixty-gram tube wholesale. *Id.* ¶ 15.

### C.     The Instant Offense

Defendant owned and operated MNED, Inc., a pharmacy located in Brooklyn, New York. *Id.* ¶ 18. As part of his operation of MNED, Inc., which did business as Avenue M Pharmacy, Defendant both oversaw the purchase of medication and supervised pharmacists who submitted claims for reimbursement. *Id.*

Between February of 2017 and September of 2021, Defendant, through Avenue M Pharmacy, submitted and caused the submission of fraudulent claims for Targretin. *Id.* ¶¶ 18-19. Avenue M Pharmacy, in reimbursement submissions to Medicare through Part D Plans or sponsors, claimed to have dispensed approximately 253 tubes of the drug. *Id.* ¶ 22. While Defendant *did* contract with a wholesale drug company on behalf of Avenue M Pharmacy for the purchase of Targretin Gel 1%, invoices show that only 110 tubes of the drug were actually purchased. *Id.* ¶¶ 21-22. Given the discrepancy between the amount of drugs Avenue M Pharmacy purchased and the drugs it claims to have dispensed, it is apparent that claims were submitted when there was no beneficiary at all. *Id.* ¶¶ 22, 28. Further, a review of Medicare beneficiary records revealed that the Targretin Avenue M Pharmacy purportedly dispensed to beneficiaries was often not medically necessary or prescribed by a physician at all. *Id.* ¶ 23. The PSR documents at least four instances in which the doctor who purportedly prescribed the drug on numerous occasions had no record of making such prescriptions and further confirmed that Targretin would not have been medically necessary or reasonable for the beneficiary in question. *Id.* ¶¶ 25-27. In total, Avenue M Pharmacy sought reimbursement of over $4 million for its purported dispensation of this drug. *Id.* ¶¶ 22, 28.

On March 14, 2022, agents of the Federal Bureau of Investigation arrested Defendant at John F. Kennedy International Airport in Queens, New York. *Id.* ¶ 29. On September 28, 2022, Defendant waived indictment and pled guilty to the sole count of an Information, charging him with Health Care Fraud in violation of 18 U.S.C. § 1347. ECF No. 23 ¶ 1.

As part of his plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposes a sentence at or below 78 months of imprisonment. ECF No. 23 ¶ 4.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## III. Analysis

### D. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 6. Family and Personal Background

Defendant was born on December 4, 1982 in Tashkent, Uzbekistan. PSR ¶ 53. Defendant was raised by his parents, Yosef Rafaelov and Nina Rafaelov, in a household free from abuse or neglect. *Id.* ¶¶ 53, 55. When Defendant was eight years old, his parents moved to Tel Aviv, Israel. *Id.* ¶ 55. In 1998 when Defendant was 15 years old, the family again relocated, this time to Queens, New York. *Id.* ¶ 55. In 2008, Defendant became a United States citizen. *Id.* ¶ 60. According to Defendant, he has a good relationship with both parents and still communicates with them daily. *Id.* ¶ 53. Defendant also has one older sister, Alvira Rafaelov, with whom he also reports having a good relationship. *Id.* ¶ 54. Defendant's parents and sister are aware of the instant case and remain supportive. *Id.* ¶¶ 53-54.

On September 28, 2006, Defendant married Marta Levy, with whom he shares five children. *Id.* ¶ 57. Defendant reportedly has a close relationship with his children and is very involved in their lives. *Id.*

#### 2. Educational and Employment History

Defendant graduated from Forest Hills High School in Queens, New York, in 1999. *Id.* ¶ 73. Defendant does not have a college degree, although he does report attending Touro College in Manhattan for at least two years as well as Queensborough Community College in Queens for a year. *Id.* ¶ 72. In addition to English, Defendant is fluent in Russian and Hebrew. *Id.* ¶ 76.

Defendant began working as a barber when he was 18 years old. *Id.* ¶ 80. Sometime between 2010 and 2012, Defendant opened his own barber shop in Mill Basin, Brooklyn. *Id.*

Defendant stopped working as a barber in 2016 and sold his shop around that time. *Id.* As previously noted, Defendant had joint ownership in Avenue M Pharmacy beginning in 2016. *Id.* ¶ 78. Avenue M Pharmacy's annual revenue was $2,070,000.00. *Id.* Defendant has also owned an investment property since 2019. *Id.* Defendant has been unemployed since his arrest. *Id.* ¶ 77.

       3.      Prior Convictions

Defendant has no prior criminal convictions or arrests. PSR ¶¶ 46-51.

       4.      Physical and Mental Health

Defendant reports suffering from migraines and other health issues, but is distrustful of doctors and medication and therefore has not sought professional help. *Id.* ¶ 62. As for Defendant's mental health, he reports suffering from depression since his arrest, which has manifested in feelings of tiredness and lack of motivation. *Id.* ¶ 63. Defendant states that he is open to receiving mental health treatment. *Id.*

Defendant also has a history of excessive gambling, and reports losses in the thousands of dollars as a result of this habit. *Id.* ¶ 64. According to Defendant, this has also contributed to feelings of depression, and he is thankful that his conditions of release have prohibited from engaging in additional gambling. *Id.*

       5.      Substance Abuse

Defendant reports struggling with substance abuse. *Id.* ¶¶ 66-70. Defendant began drinking as a teenager and reports that, prior to his instant arrest, he would drink vodka to the point of passing out. *Id.* ¶ 68. Defendant continues to consume alcohol daily, although in smaller quantities, and reports struggling with urges to drink as heavily as he did in his past. *Id.* ¶ 68. Defendant also reports that he smokes marijuana regularly. *Id.* ¶ 67. Defendant reports

that these habits contributed to his depression and gambling. *Id.* ¶ 70. Defendant is interested in receiving substance abuse treatment. *Id.* ¶ 71.

      6.      Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

### E. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved stealing over four million dollars from a health care benefit program. PSR ¶ 1. For over four years, Defendant submitted fraudulent claims for cancer medication for personal gain, harming a federal program relied upon by millions of American citizens.

### F. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of the Information, charging him with Health Care Fraud in violation of 18 U.S.C. § 1347. Defendant faces various penalties for committing this offense, including terms of imprisonment and supervised release in addition to fines, forfeiture, restitution, and a special assessment.

Specifically, Defendant faces a maximum term of imprisonment of ten years and no minimum term of imprisonment. 18 U.S.C. § 1347(a)(2). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(c). Defendant is eligible for between one and five years of probation. 18 U.S.C. § 3561(c)(1). However, if probation is ordered, one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2). The Court may impose a fine of not more than $250,000.00 pursuant to 18 U.S.C. § 3571(b). The Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A). Defendant faces forfeiture in accordance with the Order of Forfeiture. ECF No. 43; *see also* 18 U.S.C. § 982(a)(7), (b)(1) and 21 U.S.C. § 853(p). Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution in this case, the terms of which are outlined in the Order of Restitution

### G. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guidelines section for violations of 18 U.S.C. § 1347, as contained in the sole count of the Information, is U.S.S.G. §2B1.1. Pursuant to U.S.S.G. §2B1.1(a)(2), a base offense level of six is appropriate where, as here, the statute under which a defendant was convicted does not have a statutory maximum term of imprisonment of 20 years or more.

Pursuant to U.S.S.G. §2B1.1(b)(1)(J), 18 levels are added because the loss amount is greater than $3,500,000 but less than $9,500,000. An additional two levels are added because the offense involved a federal healthcare program, and the loss amount exceeds $1,000,000. U.S.S.G. §2B1.1(b)(7)(i). Pursuant to U.S.S.G. §3E1.1(a), a two-level reduction is warranted because Defendant clearly demonstrated acceptance of responsibility for the offense. One additional level is removed because Defendant timely notified the Government of his intention to enter a guilty plea. U.S.S.G. §3E1.1(b). Finally, because Defendant meets the criteria listed in U.S.S.G. §§4C1.1(a)(1)-(10), he is properly classified as a Zero-Point Offender. As such, two additional levels are removed. *See also* Addendum to the PSR, ECF No. 37 at 1. The total offense level in this case is 21. All parties agree with this calculation. *Id.*; Gov't Mem. at 1, ECF No. 40; Defense Memorandum ("Def. Mem.") at 1, ECF No. 39.

Defendant has no prior criminal convictions. PSR ¶ 47. Therefore, under the sentencing table in U.S.S.G. Chapter 5 Part A, Defendant is appropriately in criminal history category I. All parties agree that this is the correct criminal history category. PSR ¶ 48; Gov't Mem. at 1; Def. Mem. at 1.

A criminal history category of I and a total offense level of 21 establish a recommended Guidelines range of between 37 and 46 months of imprisonment. U.S.S.G. §5A. *see also* Addendum to the PSR at 1, ECF No. 37. All parties agree with this Guidelines calculation. Gov. Mem. at 1; Def. Mem. at 1. However, the parties' recommendations as to an appropriate sentence vary.

Probation recommends a sentence of 37 months of imprisonment to be followed by two years of supervised release with special conditions. Revised Probation Recommendation at 1, ECF No. 37-1. Probation also recommends restitution in the amount of $4,261,609.25, due

immediately and payable at a rate of $25 per quarter while in custody and 10% of the defendant's gross monthly income while on Supervised Release. *Id.* Probation also recommends compliance with the Order of Forfeiture and payment of the mandatory $100.00 special assessment. *Id.* Considering the priority of restitution, Probation does not recommend the Court impose a fine. Addendum to the PSR ¶ 92, ECF No. 37.

As support for its sentencing recommendation, Probation notes that defrauding a governmental health care program is inexcusable. ECF No. 37-1 at 3. "Quite simply," Probation writes, "his actions appear to have been motivated by greed." *Id.* Probation further highlights Defendant's noncompliance with his conditions of release, which they say he has violated on numerous occasions by deviating from the itinerary imposed as part of his location monitoring. *Id.* at 2. Probation further highlights the fact that Defendant was not forthcoming with his finances, failing to provide proof of financial support as requested by Pretrial Services. *Id.* Probation also points out the absence of any mitigating factors in Defendant's personal history, as well as the fact that, given his assets, it appears that neither Defendant nor his family will struggle financially, even after restitution. *Id.* at 3. Probation also recognizes and factors in the absence of a criminal record in making its recommendation. *Id.*

Defense counsel requests a sentence of one year and one day, which is a downward departure from the Guidelines range. Def. Mem. at 4-5. Defense counsel also requests that the Court recommend participation in a Residential Drug and Alcohol Program, and that Defendant be allowed to serve his sentence at Otisville Satellite Prison Camp, which is close to his family. *Id.* Defense counsel argues a sentence below the Guidelines range is warranted "primarily because he is a first-time, non-violent offender with an otherwise unblemished background; because he provided important and substantial cooperation to the United States and because of

the other factors in section 3553(a)." *Id.* at 5.  With respect to Defendant's cooperation, defense counsel highlights the fact that Defendant ultimately acknowledged, and provided information to the Government about, another individual's involvement in the same crime, even though he initially withheld this information. *Id.* at 2-3.  Defense counsel notes that Defendant is extremely remorseful, and writes that, while he "may never know what prompted his inexcusable lapse in judgment," his "shame is real." *Id.* at 3.  Defense counsel highlights Defendant's commitment to his family and to his synagogue, *id.*, and notes that while his good reputation is lost, he "intends to live a respectable and law-abiding life after he is released from custody as he works to rebuild his good standing in the community," *id.* at 4.

This Court has read and considered the letters written by Defendant's family members, friends, and rabbis.  ECF No. 39-1.  These letters describe Defendant as a loving and committed father, a caring husband, and a selfless and devoted member of his community.  *Id.*  The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends a Guidelines sentence of between 37 and 46 months of imprisonment.  Gov't Mem. at 1.  The Government also requests forfeiture in accordance with the Order of Forfeiture, entered on March 21, 2024.  *Id.*  ECF No. 43.  The Government also requests the Court order restitution in accordance with the Order of Restitution.  Gov't Mem. at 1..

Such a sentence is warranted, the Government argues, because fraud against a national health care program relied upon by millions of Americans is particularly serious.  Gov't Mem. at 6. The Government also argues that a Guidelines sentence serves a deterrent purpose because it sends a message to white collar criminals that they risk significant penalties if they engage in fraud such as this, which "threaten[s] the integrity of the Medicare and Medicaid programs." *Id.*

The Government emphasizes that Defendant's crime, which he committed over the course of four years, was "deliberate and not a momentary lapse of judgment." *Id.* at 5. While the Government does not dispute Defendant's commitment to his family or community, it notes that he "did not commit this crime out of his family's need or for his community – it was for his personal enrichment." *Id.* While he could have made money honestly, the Government argues, he instead "implemented a multi-year scheme to inflate his bottom line." *Id.* Further, the Government points out that there is "no reason to believe that the defendant would have stopped had he not been caught." *Id.* The Government also rejects defense counsel's argument that a more lenient sentence is warranted because of Defendant's assistance to the Government, noting that any assistance he ultimately gave was "undercut[]" by his initial "decision to conceal and minimize his actions – and the actions of others." *Id.* The Government further notes that it did not rely on the eventual information Defendant offered about the other individual involved, and "has no plan to do so." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

      **H.**    **Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

      **I.**    **The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

similar conduct." 18 U.S.C. § 3553(a)(6).  For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### J. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).  As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A.  The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 37months of imprisonment, to be followed by two years of supervised release with special conditions.  The Court orders forfeiture in accordance with the Order of Forfeiture at ECF No. 43, which, by its terms, becomes final at sentencing.  The Court also orders a $100.00 mandatory special assessment.  Finally, the Court orders restitution in accordance with Restitution Order.  This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2).  Given the priority of restitution in this case, the Court does not impose a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 29, and its Addendum, ECF No. 37, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.



HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 22, 2024
Brooklyn, New York